IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,           )<br>                                      )<br>       Plaintiff,                    )<br>                                      )<br> vs.                                  )         8:04CV<br>                                      )<br> ONE 1996 FORD MUSTANG COBRA CONVERTIBLE, )   **VERIFIED COMPLAINT**<br> VIN 1FALP46VXTF186365,                )   **FOR FORFEITURE**<br>                                      )<br>       Defendant.                    )  | |

COMES NOW the Plaintiff, United States of America, and for its cause of action against the Defendant, states and alleges as follows:

1. The Court has jurisdiction of this matter pursuant to Title 28, United States Code, Sections 1345, 1355 and 1395, and pursuant to Title 21, United States Code, Section 881.

2. The defendant is One 1996 Ford Mustang Cobra Convertible, VIN 1FALP46VXTF186365.

3. The defendant property is now and will be during the pendency of this action in the judicial district of the State of Nebraska.

4. On or about March 5, 2004, the defendant property was seized by deputies of the Hamilton County Sheriff's Office; said seizure took place on land, within the District of Nebraska. Immediately after said seizure, administrative forfeiture proceedings were instituted by the United States Drug Enforcement Administration.

5. Richard Phillip Fink is the registered title holder of the defendant property.

6. Richard Phillip Fink has filed a Claim for ownership, pertaining to said defendant property, with the United States Drug Enforcement Administration.

7. On March 5, 2004, Jordan Fink was in possession of the Defendant property, as property that was used or was intended to be used to facilitate the transportation, sale, receipt, possession, concealment or distribution of a controlled substance, as more particularly described as follows:

    a. At approximately 11:35 p.m., on March 5, 2004, Deputy Paul Jantzen of the Hamilton County Sheriff's Office was on patrol in a marked unit traveling eastbound on Interstate I-80 in Hamilton County, Nebraska. Deputy Jantzen was traveling the outside driving lane in the area of mile marker 329. Deputy Jantzen observed a vehicle traveling eastbound in the inside, passing lane that appeared to be traveling at a high rate of speed. Deputy Jantzen noted that his patrol car speed was set at 70 miles per hour. As the vehicle passed Deputy Janzten, he estimated the vehicle's speed to be in excess of the posted speed limit of 75 miles per hour. Deputy Jantzen observed the vehicle to be a black Mustang Cobra Convertible bearing Michigan license RXY711. Deputy Jantzen paced the vehicle for approximately two miles at 85 miles per hour.

    b. At approximately 11:40 p.m., Deputy Jantzen activated his overhead emergency lights and conducted a traffic stop at the beginning of the eastbound off ramp of the Aurora interchange, Interstate I-80. Deputy Jantzen contacted the vehicle on the passenger side and observed two white males occupied the vehicle. When asked if they were in a hurry that night, they advised that they had fallen behind schedule. Deputy Jantzen then asked for the vehicle registration and drivers' licenses.

2

The passenger advised Deputy Jantzen that the vehicle was his and the driver was a friend. They advised that they were en route to Iowa City, Iowa. Deputy Jantzen obtained the vehicle registration and the drivers' licenses of the occupants and returned to his patrol car to issue a warning to the driver for speeding. The driver was identified as David Marc Alekman and the passenger, Jordan Nathan Fink, both of Michigan. Deputy Jantzen returned to the vehicle and asked David Alekman to come back to the patrol unit. He agreed.

    c. Deputy Jantzen inquired of David Alekman where they were coming from and was advised Boulder, Colorado. Deputy Jantzen then asked why they were traveling to Iowa City. David Alekman stated that Jordan Fink's parents had lined up a motel for them. David Alekman stated that Jordan Fink was attending college at Santa Barbara Community College in Santa Barbara, California, and was moving back to Michigan. David Alekman stated that he flew out to California and was helping Jordan Fink drive back to Michigan. During the conversation, Deputy Jantzen could detect a very strong odor of marijuana coming from David Alekman's person. David Alekman was issued a warning for speeding. Jordan Fink was issued a correction card for an expired registration certificate.

    d. Deputy Jantzen returned to the vehicle and explained the correction card to Jordan Fink. Jordan Fink stated that he had the current registration card and provided it to Deputy Jantzen. Deputy Jantzen issued him the warning and advised him that he needed to throw the other one away. While talking with Jordan Fink, Deputy Jantzen detected a strong odor of marijuana coming from within the vehicle.

3

At this point, Deputy Jantzen returned to his patrol car and asked David Alekman to exit the unit. Deputy Jantzen explained the speeding warning and told David Alekman he was free to go. Deputy Jantzen then approached Jordan Fink again and asked him to go to the front of the patrol car. He agreed.

 e. Jordan Fink stated that he was moving home. Deputy Jantzen asked him if he had anything in the vehicle that he wasn't supposed to have, i.e., drugs, alcohol, guns, knives, explosives. Jordan Fink stated, 'No'. Deputy Jantzen then asked Jordan Fink why David Alekman smelled like marijuana when he was in the patrol car and why he could smell marijuana when he came up to the car to talk to Jordan Fink. Deputy Jantzen asked again if there was anything in the vehicle. Jordan Fink responded, 'No, there is not'. Deputy Jantzen then asked Jordan Fink for permission to search the vehicle. Jordan Fink stated that he knew his rights and that he did not have to consent. Deputy Jantzen informed Jordan Fink that because he could smell the marijuana, he did not need Jordan Fink's consent. The smell was probable cause to enter the vehicle. Deputy Jantzen returned to the vehicle and asked David Alekman to exit the vehicle. Both David Alekman and Jordan Fink were brought back to the front of the cruiser.

 f. Deputy Jantzen returned to the vehicle and began searching the passenger side. He noted that the interior of the vehicle had a strong odor of marijuana. Deputy Jantzen also observed a large clear plastic bag located partially under the front passenger seat with a large amount of what appeared to be marijuana. Deputy Jantzen returned to Jordan Fink and David Alekman and both were handcuffed. They were

4

not arrested at that time; the handcuffs were merely for their protection and Deputy Jantzen's.

    g. Deputy Jantzen returned to the vehicle and continued the search. He located a small amount of marijuana seeds in the center console of the vehicle. In the glove box, Deputy Jantzen located four burnt marijuana joints and a small baggie of marijuana stems and seeds. He located a gray and black backpack directly behind the front passenger seat. Inside the center compartment Deputy Jantzen located three large clear plastic bags of marijuana. He returned to Jordan Fink and advised him that he was under arrest for possession of a controlled substance with intent to deliver. Deputy Jantzen then asked Jordan Fink if everything in the vehicle was his. Jordan Fink stated, 'Yes'. Deputy Jantzen asked Jordan Fink again if everything in the vehicle was his. Jordan Fink stated that everything was his except for a couple bags. Jordan Fink and David Alekman were subsequently transported to the Hamilton County Law Enforcement Center.

    h. Upon arrival at the office, Jordan Fink was taken into the back of the booking area. David Alekman was taken into the interview room. At approximately 12:49 a.m. on March 6, 2004, Deputy Jantzen advised David Alekman of his Miranda rights. David Alekman waived his rights by signature at approximately 12:52 a.m. David Alekman stated that the marijuana in the vehicle was purchased at an unknown location in San Francisco, California. David Alekman stated that he did not know where Jordan Fink had purchased the marijuana. He admitted to smoking the marijuana along the trip with Jordan Fink. He also stated that they had smoked

5

marijuana earlier in the day, but could not remember when. David Alekman stated that he knew that there were two ounces of marijuana in the vehicle. He stated that he did not know how much Jordan Fink paid for it. He also stated that Jordan Fink's parents paid for his airline ticket out to California to assist Jordan Fink in driving back to Michigan.

   i. At approximately 1:32 a.m., Jordan Fink was brought back to the interview room and advised of his <u>Miranda</u> rights. Jordan Fink invoked his right to a lawyer and refused to talk. Jordan Fink and David Alekman were subsequently cited and jailed for possession of marijuana with intent to deliver, possession of drug paraphernalia, and no drug tax stamp. David Alekman was also cited for driving under the influence of drugs.

   j. The vehicle was impounded and inventoried at the Hamilton County Law Enforcement Center. During the search of the vehicle, Deputy Jantzen located a silver marijuana grinder, two glass marijuana pipes and a glass marijuana bong. Also located in the vehicle were seven small plastic boxes of 'humbolt hash'. Deputy Jantzen also found three baggies of marijuana hidden inside a PS2 box in the trunk. All together, nine bags of marijuana and the previously-mentioned seven boxes of 'humbolt hash' were located. Each individual bag was subsequently labeled and weighed. Total weight of the marijuana and hash was approximately 6.79 ounces. The marijuana and hash were logged into evidence and sent to the Nebraska State Patrol Crime Lab for drug analysis. Also located in the vehicle was paperwork from the Superior Court of California, County of Santa Barbara, Figueroa Division stating

that Jordan Fink was arrested for possession of marijuana with intent to deliver. According to the documents and Jordan Fink's own admission, he was placed on two years' unsupervised probation.

8. Based on the foregoing, the defendant property was used or was intended to be used to commit or facilitate the commission of violations of Title 21, United States Code, Sections 841(a)(1) and 844. The defendant property is therefore subject to forfeiture to the United States of America, pursuant to Title 21, United States Code, Section 881(a)(4), and no other property rights should exist in it.

WHEREFORE, the plaintiff, United States of America, prays the defendant property be proceeded against for forfeiture in accordance with the laws and regulations of the rules of this Court; that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed; that the defendant property be condemned, as forfeited, to the United States of America and disposed of according to law and regulation; that the costs of this action be assessed against the defendant property; and for such other and further relief as this Court may deem just and equitable.

UNITED STATES OF AMERICA,
Plaintiff

MICHAEL G. HEAVICAN
United States Attorney

By: NANCY A. SVOBODA (#17429)
Assistant U.S. Attorney
1620 Dodge Street, Suite 1400
Omaha, Nebraska 68102-1506
(402) 661-3700

## VERIFICATION

STATE OF NEBRASKA )
) ss.
COUNTY OF DOUGLAS )

Pursuant to Rule C(2), Supplemental Rules of Certain Admiralty and Maritime Claims, Assistant United States Attorney for the District of Nebraska, Nancy A. Svoboda, being first duly sworn, deposes and states that the facts set forth herein are true and correct according to the best of her knowledge and belief.

NANCY A. SVOBODA
Assistant U.S. Attorney

Subscribed and sworn to before me this 8th day of September, 2004



Notary Public

Pursuant to the rules of this Court, the United States of America hereby requests the trial of the above and foregoing action be held in Omaha, Nebraska, and that it be calendared accordingly.

NANCY A. SVOBODA
Assistant U.S. Attorney